UNITED STATES of America,
Plaintiff-Appellee,

v.

Eric Eugene WILLIAMS,
Defendant-Appellant.

No. 86–8576.

United States Court of Appeals,
Eleventh Circuit.

May 14, 1987.

---

Stephen H. Harris, Savannah, Ga., (Court-appointed), for defendant-appellant.

Kathryn M. Aldridge, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this appeal, we affirm the district court's rulings regarding the denial of a new trial based on newly discovered evidence and the introduction of extrinsic evidence to prove the appellant's intent at the time of the commission of the crimes charged.

## FACTS

In the early morning of February 6, 1986, as a woman delivered her children to a baby sitter on Fort Stewart Military Reservation, in Georgia, a man confronted her. The man inquired about the location of a number of different addresses. While holding a pistol, he ordered the woman (first victim) to get into her car and threatened to kill her unless she did so. After she got in the car, he instructed her to turn off the engine and to open the passenger side door. As he walked around the front of the car, the woman quickly reached over and locked the passenger side door, backed the car into the street, and left the scene. She reported the incident to the military police.

Shortly thereafter, on the same morning, another woman (second victim) was returning to her home on Fort Stewart after having delivered her children at school. A man wandering around in the vicinity of her home approached her. The man told this woman that a problem had developed with her heating system, that he was an engineer, and that he needed to enter her house. Since no engineer's truck was in the vicinity, she refused to go into the house. As she headed for the house next door, the man pulled out a pistol and attempted to forcibly take her into her house. She escaped, ran next door for help, and notified the military police. Both victims identified the appellant, Eric Eugene Williams, as the man who accosted them.

## PROCEDURAL HISTORY

On March 21, 1986, a grand jury indicted Eric Eugene Williams for two violations of 18 U.S.C. § 113, assault with a dangerous weapon, and two violations of 18 U.S.C. § 924(c), carrying a firearm in the commission of a crime of violence. Williams entered pleas of not guilty.

On April 29, 1986, a jury returned guilty verdicts on all four counts. The court sentenced Williams to five years on each count of the indictment, to be served consecutively, for a total of twenty years. After sentencing, Williams filed a Motion for New Trial seeking to present newly discovered alibi evidence and alleging error in the admission of evidence of similar acts.

## ISSUES AND CONTENTIONS

Williams raises two issues in this appeal: (1) whether the district court abused its discretion in denying his Motion for New Trial based on newly discovered evidence; and (2) whether the district court abused its discretion in admitting extrinsic evidence under rule 404(b) of the Rules of Evidence.

Williams contends that the district court abused its discretion in denying his Motion for New Trial in light of newly discovered

alibi testimony by Samuel and Cynthia Parlin. He claims that he was visiting the Parlin home at the time the assaults were committed. It was only after Williams was convicted that the Parlins recalled that Williams was at their home the morning these assaults occurred.

Williams also contends that the district court abused its discretion by permitting evidence of two rapes to be introduced at his trial. The government introduced evidence concerning the rapes of two women as similar acts under Federal Rule of Evidence 404(b). Williams contends that such evidence is not relevant because rape is not similar to assault, that the probative value of such evidence is clearly outweighed by undue prejudice, and that such evidence is not probative of his intent on the facts of this case.

## DISCUSSION

### A. Newly-Discovered Alibi Evidence

■ "A motion for new trial is entrusted to the discretion of the trial judge, is not subject to facile reversal, and 'will be reversed only where it is shown that the ruling was so clearly erroneous as to constitute an abuse of discretion.'" *United States v. Metz,* 652 F.2d 478, 479 (5th Cir. Unit A 1981) (quoting *United States v. Antone,* 603 F.2d 566, 568 (5th Cir.1979)). Where a defendant seeks a new trial based on newly discovered evidence, four requirements must be satisfied as set forth in *Bentley v. United States,* 701 F.2d 897 (11th Cir.1983): (1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material, and not merely cumulative or impeaching; (3) the evidence must be such that it will probably produce an acquittal; and (4) the failure to learn of such evidence must be due to no lack of diligence on the part of the defendant. *Bentley v. United States,* 701 F.2d at 898 (citations omitted). The government contends that Williams failed to satisfy the *Bentley* criteria with his newly discovered alibi evidence.

The first *Bentley* criterion requires that the evidence be newly discovered and be unknown to the defendant at the time of trial. In the *Bentley* case, Bentley was convicted on two counts of making false statements about his criminal record in order to acquire firearms, 18 U.S.C. § 922(a)(6) and on two counts of receiving firearms after being convicted of a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C. § 922(h). His convictions were affirmed on direct appeal. Bentley sought collateral relief under 28 U.S.C. § 2255 asserting numerous grounds, including newly discovered evidence in the form of an alibi witness. This court affirmed the district court. In *Bentley,* we discussed newly discovered evidence as grounds for a new trial with specific attention given to a claim of newly discovered alibi evidence. We decided that the facts concerning an alibi are "peculiarly within the knowledge of a defendant himself." *Bentley v. United States,* 701 F.2d at 899. We noted the difficulty facing a defendant in convincing us that alibi evidence is available which was unknown at the time of trial. Likewise, the defendant would face the same difficulty convincing us that failure to produce the alibi witness at trial was not the result of a lack of due diligence.

■ We are not convinced that the exculpatory testimony of Samuel and Cynthia Parlin qualified as newly discovered evidence. Williams's presence at the Parlin home on the day the assaults occurred could not have been unknown to him at the time of trial. Williams states that it was not unusual for him to visit the Parlin home in the early morning hours; and yet, in seeking to recall his whereabouts on the morning of February 6, 1986, he never suggested the Parlin home as a possibility. We also note that Williams provided the government with notice of an alibi defense, and then withdrew that notice, choosing not to present an alibi defense. Williams has not satisfied the first of the four *Bentley* requirements.

Having failed to meet the first requirement, we need not expound at length on the remaining *Bentley* requirements. We do note, however, that with respect to the fourth requirement, we are not convinced,

due to the nature of an alibi, that Williams's failure to produce his alibi witnesses at the time of trial is not the result of a lack of due diligence. Williams has not demonstrated that the district court abused its discretion. For this reason, we affirm the district court's denial of Williams's Motion for New Trial based on newly discovered evidence.

### B. Admission of Evidence of Similar Acts Under Rule 404(b)

■ A trial court is afforded broad discretion in determining the admissibility of evidence; and, its determination will not be disturbed absent a clear showing of abuse. *United States v. Dothard,* 666 F.2d 498, 501 (11th Cir.1982). Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity with the character trait presented. The rule provides, however, that such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The leading case in this circuit interpreting rule 404(b) is *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (in banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). When a party seeks to introduce extrinsic evidence under rule 404(b), the court must engage in the two-part analysis set forth in *Beechum.*

The first part of the *Beechum* analysis requires that the extrinsic evidence sought to be introduced is relevant to some issue other than the defendant's character. The test for relevancy under this part of the analysis is identical to the test established by rule 401 of the Federal Rules of Evidence. Rule 401 deems relevant evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Beechum,* 582 F.2d at 911.

■ Williams contends that the evidence of the two rapes was improperly admitted because his intent to commit the assaults was not in issue. He also contends that rape is not so similar to assault with a dangerous weapon as to satisfy the *Beechum* test for relevancy. We disagree on both grounds.

Williams was charged with two violations of 18 U.S.C. § 113, Assault with A Dangerous Weapon. Section 113 states that "[w]hoever ... is guilty of an assault shall be punished as follows: ... (c) assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both." From the language of the statute, it is clear that assault with a dangerous weapon is a specific intent crime. The government had the burden of proving beyond a reasonable doubt that Williams intended to do bodily harm to his assault victims. Thus, Williams's intent in committing the assaults was in issue. The question then is whether the rapes are sufficiently similar to the assaults to be relevant to his intent.

■ Similarity of the extrinsic acts to the offenses with which Williams is charged is the standard by which relevancy is measured under rule 404(b). *United States v. Kopituk,* 690 F.2d 1289, 1334 (11th Cir.1982). Similarity is a matter of degree. The extrinsic acts must be similar enough to the two assaults to be probative of Williams's intent. We would not generally regard rape and assault as similar acts, but in this case, Williams was charged with assault with an intent to do bodily harm.

The facts of the commission of the two rapes are strikingly similar to the facts of the commission of the two assaults. One of the rapes occurred on a rainy day when Williams was not working, as did the two assaults. Williams engaged the first rape victim in conversation, prior to attacking her, just as he did with the two assault victims in this case. The rape of the other woman occurred in her car. Williams approached her as she entered her car, held pistol, and threatened to "blow [the rape victim's] brains out," just as he threatened

the first assault victim that he would "blow her head up."

Where the issue is intent, relevancy is determined by comparing the defendant's state of mind in committing the extrinsic acts with the defendant's state of mind while committing the charged offense. *United States v. Kopituk,* 690 F.2d at 1334. The government suggests that Williams's state of mind while assaulting the women in this case was identical to his state of mind when he raped the two women. The prosecution asserts that the only reason he did not rape the assault victims is because both women escaped before he could overpower them. The government argues that Williams must have intended to inflict harm on the assault victims because he forced one victim into her car at gunpoint, and intended to get into the car with her, and grabbed the other victim while holding a gun, and attempted to drag her into the house. Whether he would have raped the assault victims, or whether he would have inflicted some other bodily harm, is not important here. We find that, on these facts, Williams's state of mind in committing the rapes was sufficiently similar to his state of mind in committing the assaults so as to render the extrinsic evidence relevant under *Beechum.*

The second part of the *Beechum* analysis requires that the extrinsic evidence sought to be introduced possess probative value that is not substantially outweighed by undue prejudice. *Beechum* also requires that the introduction of the extrinsic evidence be in compliance with Federal Rule of Evidence 403, such that the probative value must not be substantially outweighed by confusion of the issues, the danger of misleading the jury, or undue delay.

The rule in this circuit is that extrinsic evidence of similar acts will possess great probative value if the defendant's intent is in issue and if the government lacks other strong evidence of defendant's intent. *United States v. Kopituk,* 690 F.2d 1289 (11th Cir.1982). In this case, the government lacked other strong evidence of Williams's intent. The only evidence it had, other than the extrinsic

evidence of the two rapes, was the testimony of the victims. Because both victims were able to escape from Williams before he consummated whatever he was intending at the time, the government's task of proving his specific intent in each of those encounters was onerous. Because the government's evidence of intent is so attenuated, the extrinsic evidence of the two rapes has great probative value.

All relevant evidence is inherently prejudicial, therefore, the possibility of prejudice to the defendant always exists. *United States v. McRae,* 593 F.2d 700, 701 (5th Cir.1979), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). Only "unfair" prejudice is prohibited by Federal Rule of Evidence 403. This court has invariably held that determining prejudice to outweigh probativeness under rule 403 is an exceptional remedy. In *United States v. Blanton,* 793 F.2d 1553, 1564 (11th Cir. 1986), we noted that because excluding evidence from the jury's consideration is an exceptional remedy, it is invoked sparingly.

We seek to avoid the introduction of extrinsic evidence which is likely to incite the jury to an irrational decision. Thus, the standard we apply in determining when prejudice becomes unfair requires an assessment of the heinous nature of the extrinsic offenses. If the extrinsic offenses are of such a heinous nature that they are likely to sway the jury irrevocably to a decision of guilt, then they must be excluded under rule 403. *United States v. Eirin,* 778 F.2d 722, 732 (11th Cir.1985). This determination lies within the sound discretion of the trial court and calls for a "common sense assessment of all the circumstances surrounding the extrinsic offense." *United States v. Dothard,* 666 F.2d 498, 502–03 (11th Cir.1982). Because the assaults in this case require proof of Williams's specific intent to do bodily harm, and because the details of the rapes are so similar to the details of the assaults to reflect Williams's intent, we find that the extrinsic evidence was not unfairly prejudicial and was properly admitted at trial. This is not to say that we would consider

assault and rape to be similar acts in all cases.

For the reasons discussed, we affirm. AFFIRMED.