[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14327
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cr-00024-MTT-CHW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARSHALL H. FOSKEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(June 30, 2014)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

On November 5, 2010, Marshall Foskey, having been found guilty by a jury of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), was sentenced by the District Court to a prison term of 240 months.   On January 9, 2012, we affirmed his conviction.  *United States v.* Foskey, 455 Fed.Appx. 884 (11th Cir. 2012), rejecting his challenge that the District Court erred in denying his motion to suppress the "semiautomatic handgun, ammunition, and camouflage clothing and face paint," *id.* at 3, the Macon Police discovered in his van during an inventory search.[1]

 On February 15, 2012, Foskey, proceeding *pro se*, moved the District Court for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on newly discovered evidence relevant to the issues involved in the hearing on his motion to suppress.  The evidence consisted of the Macon Police Department ("MPD") Impound Motor Vehicle Procedure Policy, as contained in the MPD's General Order 1020.  This evidence, he argued, established that the Government (1) suppressed evidence favorable to the defense in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) knowingly used perjured testimony, in violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31

---

[1] The police seized the van after Foskey refused to communicate with the police officers who had arrested him because "no one was available to take custody of the vehicle." *Foskey* 455 Fed.Zppx. at 3

L.Ed.2d 104 (1972); and (3) committed prosecutorial misconduct by soliciting perjured testimony, withholding exculpatory evidence, using fraudulent documentation, and committing fraud on the court in order to obtain his conviction.  The District Court denied his motion, and he appeals.

On appeal, Foskey argues that the District Court abused its discretion in denying his motion for a new trial, as he demonstrated that the Government, in failing to disclose the MPD Impound Motor Vehicle Procedure Policy, violated the *Brady* rule, and *Giglio* as well, because it obtained his conviction based on the false testimony of MPD officers.  Additionally, he argues that the court erred by accepting the Government's new theory for his vehicle's impoundment; the Government previously argued that the impoundment and subsequent inventory search were authorized under the MPD's Search and Seizure Policy.  Finally, he contends that the Government violated *Brady* and *Giglio* when it failed to disclose to him the witness statements contained in the MPD's investigative report that were material to the case.

We review the denial of a Rule 33 motion for a new trial for abuse of discretion.  *United States v. Sweat*, 555 F.3d 1364, 1367 (11th Cir. 2009).  Additionally, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) (quotations omitted).

3

"Under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate decision in the same case." *Alphamed, Inc. v. B. Braun Med., Inc.*, 367 F.3d 1280, 1285-86 (11th Cir. 2004). Further, "a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). The law of the case doctrine applies unless: (1) our prior decision resulted from a trial where the parties presented substantially different evidence from the case at bar; (2) subsequently released controlling authority dictates a contrary result; or (3) the prior decision was clearly erroneous and would work manifest injustice. *Alphamed*, 367 F.3d at 1286 n.3.

Rule 33 allows a defendant to file a motion for a new trial within 3 years after the verdict if the motion is based on "newly discovered evidence," or 14 days after the verdict if based on "other grounds." Fed. R. Crim. P. 33(b). The court may grant the motion "if the interest of justice so requires." Fed. R. Crim. P. 33(a). To succeed on a Rule 33 motion based on newly discovered evidence, the defendant must establish that:

> (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching,

4

(4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (quotations omitted).  The defendant must satisfy all of these elements to warrant relief. *United States v. Williams*, 816 F.2d 1527, 1530 (11th Cir. 1987).  Motions for a new trial based on newly discovered evidence "are highly disfavored . . . and should be granted only with great caution."  *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (*en banc*) (quotations omitted).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97.  In order to obtain a new trial on the basis of a *Brady* violation, the defendant must show that:

> (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

*United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).

While both impeachment and exculpatory evidence fall within the *Brady* rule, a finding of materiality is required to support a new trial.  *United States v. Bagley*, 473 U.S. 667, 676-77, 105 S.Ct. 3375, 3380-81, 87 L.Ed.2d 481 (1985).

Evidence is material if there is a "reasonable probability" that disclosure of the evidence would have changed the outcome of the proceeding. *Id.* at 682, 105 S.Ct. at 3383. "The question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, but whether in its absence he received a fair trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). The defendant does not have to demonstrate by a preponderance that disclosure of the suppressed evidence would have resulted in an acquittal. *Id.* Rather, the defendant establishes a *Brady* violation by showing that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435, 115 S.Ct. at 1566. A reviewing court considers materiality "in terms of the cumulative effect of suppression." *Id.* at 437, 115 S.Ct. at 1567.

The government's presentation of perjured testimony or failure to correct false evidence violates due process. *Giglio*, 405 U.S. at 153-55, 92 S.Ct. at 766. In order to establish a *Giglio* violation, the defendant must show that "(1) the contested statements were actually false, (2) the statements were material, and (3) the prosecution knew that they were false." *United States v. Bailey*, 123 F.3d 1381, 1395 (11th Cir. 1997) (quotations omitted). The use of testimony that is inconsistent with a witness's prior testimony or that of a co-defendant does not suffice to show that the proffered testimony was false. *Hays v. State of Ala.*, 85

6

F.3d 1492, 1499 (11th Cir. 1996) (addressing a federal habeas petition).  Moreover,

"[a] different and more defense-friendly standard of materiality applies where the

prosecutor knowingly used perjured testimony, or failed to correct what he

subsequently learned was false testimony." *United States v. Alzate*, 47 F.3d 1103,

1110 (11th Cir. 1995).  The falsehood is deemed to be material "if there is any

reasonable likelihood that the false testimony *could have* affected the judgment of

the jury." *Id.* (quotations omitted) (emphasis in original).  "[T]his standard of

materiality is equivalent to the *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct.

824, 828, 17 L.Ed.2d 705 (1967), 'harmless beyond a reasonable doubt' standard."

*Id.*

        We conclude that the District Court did not abuse its discretion by denying

Foskey's Rule 33 motion for a new trial.  First, with regard to his claim that the

Government violated *Brady* by failing to produce the impound policy, the court

correctly found that Foskey did not establish prejudice under *Brady*.  *See Vallejo*,

297 F.3d at 1164.  Under the policy, MPD officers were authorized to impound a

vehicle for safekeeping when the operator of the vehicle was arrested, as well as to

remove any evidence of a crime found during an inventory search of the vehicle.

In affirming Foskey's conviction, we held that the court correctly found that the

officers reasonably suspected that the vehicle belonged to Foskey.  *See United*

*States v. Foskey*, 455 Fed.Appx. 884, 889-90 (11th Cir. 2012) (unpublished).

Therefore, under the law of the case doctrine, the officers were authorized under the policy to impound the vehicle and conduct the inventory search. As such, even had Foskey been provided the impound policy, there was not a reasonable probability that the outcome of his proceedings would have been different. *See Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383.

Next, the District Court also correctly found that Foskey was not entitled to a new trial on the basis of any false testimony. While Foskey argues that the arresting officers' testimony was untrue, his claim is foreclosed by the law of the case doctrine, as we held on direct appeal that the officers' testimony was consistent with the evidence in the record. *See Foskey*, 455 Fed.Appx. at 890. Additionally, as the doctrine bars a finding that the officers' testimony was false, Foskey cannot establish that he was entitled to a new trial on the basis of any *Giglio* violation. *See Giglio*, 405 U.S. at 153-55, 92 S.Ct. at 766; *Bailey*, 123 F.3d at 1395.

Further, Foskey's claim that he is entitled to a new trial because the Government put forth, and the District Court adopted, a "new theory" for his vehicle's impoundment is unavailing. At the suppression hearing prior to trial, the Government argued that the inventory search of Foskey's vehicle was authorized under the MPD's search and seizure policy. Later, in response to Foskey's motion for a new trial, it argued that: (1) the impound policy was merely cumulative to the

8

evidence presented at the suppression hearing; and (2) in any event, the officers complied with the impound policy.  Thus, the record does not support Foskey's assertion that the Government changed its theory for justifying the inventory search.

Finally, the court correctly found that Foskey was not entitled to a new trial on the basis of the MPD's investigative report.  The portions of the report at issue contained witness statements, which were cumulative to the evidence presented at the suppression hearing.  In sum, the court correctly found that the report did not support either a *Brady* or *Giglio* claim.  *See Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383; *Alzate*, 47 F.3d at 1110.

The District Court's denial of Foskey's motion for new trial is, accordingly, AFFIRMED.